**STATE of Oklahoma ex rel. Ben T. WIL-LIAMS, Chief Justice, Supreme Court of Oklahoma, Appellee,**

v.

**William H. HAWORTH, Jr., Appellant.**
**No. CJ–AD–75–3.**

Court on the Judiciary of Oklahoma, Appellate Division.

June 18, 1976.

Rehearing Denied July 8, 1976.

Jim F. Gassaway, ada, Robert J. Turner, Oklahoma City, prosecutors.

Rooney McInerney, Tulsa, for appellant.

SIMMS, Justice:

Appellant District Judge of Oklahoma's Fifteenth Judicial District, appeals the judgment of the Trial Division of the Court on the Judiciary, which judgment removed him from office and further disqualified Appellant from holding any public office of honor, trust, or profit in the State of Oklahoma. These proceedings are being conducted pursuant to Article 7–A, Oklahoma Constitution.

Two propositions are urged by Appellant as grounds for reversal of the verdict of the Trial Division, i. e., (1) the Trial Court abused its discretion in overruling the motion of the Appellant for a continuance because of principal counsel's post-operation physical condition, and that the denial of continuance of trial date was contrary to pre-trial agreement memorialized by order; (2) the decision and judgment of the Trial Division disqualifying Appellant to hold any public office of honor, trust, or profit under the State of Oklahoma forever constitutes serious punishment in excess of the jurisdiction and power of the Trial Tibunal.

We first consider the argument of abuse of discretion by the Trial Division in denial of the motion for continuance.

A summary of chronological events is necessary. On September 15, 1975, the Presiding Judge of the Trial Division entered an Order setting the case for trial on November 18, 1975. On September 25, 1975, Appellant was suspended from office following hearing. On October 3, 1975, principal counsel for Appellant underwent major surgery. A pre-trial was conducted on October 31, 1975, after which a written pre-trial order was signed by the Vice-Presiding Judge of the Trial Division. The pre-trial order, in pertinent part, reads:

"It was noted that counsel for the Respondent (Appellant) might not be physically recuperated for trial on November 18, but that he thought he would know for sure by the first week in November. In the event a request for continuance is deemed necessary, counsel for Petitioner (Appellee) advised they would concur in it, and join in a request that the trial be passed to January, 1976. *All agreed their preference was for the trial to proceed as currently scheduled unless the interests of justice required delay,* in which event January was a time preferred to December." (Emphasis Added).

On November 10, Appellant filed a motion for continuance, attaching thereto the affidavit of his principal attorney and a certificate from the physician who was treating principal counsel during the post-operative period. In substance, the affidavit of counsel stated that he had been unable to adequately prepare for trial because of the operation and the resultant physical disability, and that he would not be able to spend a full day in attendance on the Court on November 18, the day of trial. The certificate from the physician stated that in the opinion of the doctor, principal counsel had not recovered to the point where it was safe for him to participate in a trial on the 18th.

On November 11, the Vice-Presiding Judge of the Trial Division, at the direction of the Presiding Judge, entered a written order denying the motion for continuance and ordering the trial to commence as initially scheduled for the 18th of November.

Immediately before commencement of trial, Appellant's principal counsel renewed his motion for continuance for the reasons stated in his previously denied written motion. Whereupon, the Presiding Judge announced:

"It is the decision of Judge Brown and myself . . . we have discussed this, and we were really worried about it, but we felt like we should start as scheduled. We had said—and I don't know if you heard this, Mr. McInerney, that we would intend to give special consideration to you or any requests during the trial, such as "not as long sessions" and anything that would be helpful to you. But it was our decision that we should start the trial today, and I do have in mind to, again, overrule and deny your request for a continuance."

As to how a majority of the authorized membership of the Trial Division would have viewed the renewed motion for continuance is not disclosed by the record before us. However, Appellant makes no complaint that the majority of the Trial Division, constituting a quorum for the purposes of exercising its jurisdiction, did not pass upon the motion for continuance.

We are at a loss to understand why, under the undisputed circumstances of the post-operative physical condition of Appellant's principal counsel, a continuance was not granted by the Trial Division. While the expeditious disposition of trials is a most commendable goal for any trial tribunal, a rush to judgment where potential jeopardy of health and life of principal counsel might be directly affected does not bear the endorsement of this Division. Particularly is this true where Appellant already stands suspended from office and

is thereby proscribed from the performance of any judicial duties.

However, whether the Trial Division should have granted the continuance, or we, in the same or similar circumstances, may have granted Appellant's motion is not the legal criteria to be applied in determining if the denial of continuance, in this case, is sufficient to cause reversal of the judgment below.

The legal test in reviewing alleged error in denial of a motion for continuance is set forth in *Jones v. Thompson*, 55 Okl. 24, 154 P. 1139:

"From an examination of the voluminous record consisting of more than 700 pages, we are persuaded that the plaintiff's cause was fully and ably presented and her interests protected by the attorney who participated in the trial, and that her substantial rights were not prejudiced by the absence of her other distinguished counsel."

"As a general rule the granting or refusing of a continuance is a matter of discretion with the trial court, and, unless it appears that such discretion was abused to the prejudice of the substantial rights of a litigant, the action of such court will not be disturbed on appeal."

*Jones, supra,* cites with approval *Pierce v. Engelkemeier,* 10 Okl. 308, 61 P. 1047, a case where continuance was sought because of illness of the defendants' principal counsel. In *Pierce,* other counsel appeared and participated freely in the trial of the cause for the defense. It was written in *Pierce:*

"The sickness of an attorney is not one of the statutory grounds entitling a party to a continuance, and it has been repeatedly and often held that an application for continuance, under circumstances like the present, is discretionary with the court."

\*   \*   \*   \*   \*   \*

"The cause appears to have been well tried on behalf of the plaintiffs in error."

The record in the instant case contains a written list of Appellant's witnesses, forty-three in number, together with a synopsis of the testimony of each of the forty-three witnesses. This instrument, designated "Witnesses and Summary of Testimony", was filed of record November 12, 1975. The instrument was signed not only by principal counsel, but also by co-counsel, Mr. Pat Malloy, a most distinguished, experienced, and effective trial practitioner. Mr. Malloy, together with principal counsel, appeared at and participated in all stages of the trial.

From a study of the record designated and submitted on this appeal, and having read the briefs and listened to oral argument, we do not find either a single allegation or evidentiary indication that principal counsel, with the aid of co-counsel, failed to offer any evidence, present any legal defense, or make any argument before the Trial Division because of principal counsel's weakened condition.

We conclude that principal counsel, despite his post-operative condition, fulfilled his professional obligation to his client in a most exemplary manner. This finding, when coupled with the factum of assistance of highly skilled co-counsel, compels us to the conclusion that Appellant has failed to show prejudice of his substantial rights resultant from the denial of his motion for continuance, or that Appellant was effectively deprived of his rightful day in Court.

Appellant next contends that the portion of the judgment of the Trial Division which forever bars him from holding any public office in this State is constitutionally impermissible. Okla.Const. Art. 7–A, § 4(d), in part provides:

"No judgment shall extend further than: (1) to removal of the respondent from office, with or without disqualification to hold any public office of honor, trust, or profit under this State, \* \* \*."

This language in Art. 7–A is analogous to the provisions of U.S.Constitution, Art. 1, § 3, which reads:

"Judgment in Cases of Impeachment shall not extend further than to removal

from Office, and disqualification to hold and enjoy any Office of honor, Trust or Profit under the United States * * *."

However, Oklahoma's Constitutional provisions as to Impeachment is more restrictive than that found in the U.S.Constitution, for Oklahoma Constitution, Art. 8, § 5, provides:

"Judgment of impeachment shall not extend beyond removal from office, * * *."

There is no mention of disqualification in Art. 8, § 5. Likewise, our statutes on removal from office limit the verdict and judgment to removal from office, without reference to disqualification. 22 O.S.1971, § 1196.

Succinctly put, a Judge or Justice is the only public officer, elected or appointed, under Oklahoma law, who may potentially be forever barred from holding any public office following removal. It is to be emphasized that there are no provisions for later removal of such disqualification, such as subsequent modification, or pardon. A person who has been convicted of rape, murder, or armed robbery, may be later pardoned and is thereafter not proscribed from holding public office by reason of his conviction, while a member of the Judiciary, under the questionable provisions of Art. 7–A, § 4(d), who has not been convicted of any high crime or misdemeanor can be perpetually disqualified from holding any public office.

Although the punitive provisions of Art. 7–A, § 4, have not been attacked upon the legal theory of invidious discrimination, it was recognized by this Court in *Sharpe v. State, ex rel., Oklahoma Bar Association,* Okl., 448 P.2d 301 (1968), that the disqualification provisions of Art. 7 presented serious legal issues when the Court said:

"It is true that in the present cause disqualification was extended to 'any public office of honor, trust, or profit' within this State. Although this sanction is expressly authorized by Article 7–A, § 4(d), Okl.Const., its generality might conceivably be subject to challenge as the deprivation of a basic civil right bordering on 'serious punishment' within an expansion of present decisional law."

We are impressed with the language of *Sharpe, supra,* which reads:

"This is so because *no sanction properly can be imposed by the Court on the Judiciary beyond that which is directly relevant to a declaration of judicial unfitness.* In short, the essence of the sanction is not 'punishment' *but present and future exclusion* from office based on grounds *bearing rational relationship to the interest of the state in the fitness of judicial personnel."* (Emphasis added)

But as in *Sharpe,* because the grounds for removal from office heard by the Trial Division pertained solely to the activities of Appellant while performing his duties as a District Judge, we feel the interests of justice will best be served by modifying the disqualification provisions of the judgment entered below. We are not, therefore, called upon to determine the question of the validity of the quoted provisions of Art. 7–A, § 4(d).

We, therefore, conclude the judgment of the Trial Division as to removal from office of Appellant is Affirmed, and that portion of the judgment "with disqualification to hold *any* public office" is modified to "disqualification to hold any *judicial* office" in the State of Oklahoma.

Judgment of the Trial Division Affirmed, as Modified.

BARNES, P. J., SIMMS, V. P. J., and HUGHES, GRAHAM, FISCHEL, McBEE, BRETT, SHUMATE and SMITH, JJ., concur.